UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
MARIA CASTRO and MARIO DEL VALLE                    :
MARTINEZ, on behalf of themselves, FLSA Collective  :
Plaintiffs and the Class,                           :
                                                    :
                                    Plaintiffs,     :        REPORT AND
                                                    :        RECOMMENDATION
        -against-                                   :
                                                    :        No. 21-CV-01391-ENV-JRC
HYPER STRUCTURE CORP. d/b/a HYPER                   :
STRUCTURE, SAHEL KHAN, CHARLES TOLIVER,            :
and MOHAMMAD RAHMAN,                                :
                                                    :
                                    Defendants.     :
-------------------------------------------------------------------x
JAMES R. CHO, United States Magistrate Judge:

        Plaintiffs Maria Castro ("Castro") and Mario Del Valle Martinez ("Martinez", and

collectively, "plaintiffs") bring this action against Hyper Structure Corp., an entity doing

business as Hyper Structure ("Hyper Structure" or "corporate defendant"), Sahel Khan ("Khan"),

Charles Toliver ("Toliver"), and Mohammad Rahman ("Rahman") ("individual defendants" and

collectively, "defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201

*et seq.*, the New York Labor Law ("NYLL") § 650 *et seq.*, and the Internal Revenue Code, 26

U.S.C. § 7434.  *See generally* Compl., Dkt. 1.  Upon plaintiffs' application and in light of

defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered

defendants' default on June 16, 2021.  *See* Dkt. 17.  Plaintiffs now move for default judgment

and seek unpaid minimum and overtime wages, "spread-of-hours" premiums, statutory penalties,

and liquidated damages.[1]  *See* [Proposed] Default J., Dkt. 19-10; *see also* Mem. of Law in Supp.

---

[1] The Court notes that plaintiffs' Complaint sought additional forms of relief not mentioned in
plaintiffs' motion for default judgment, including declaratory judgment that defendants'
practices are unlawful under the FLSA and NYLL, an injunction enjoining defendants from
engaging in such practices, and pre- and post-judgment interest.  *See* Compl., Prayer for Relief,

of Mot. for Default J. ("Pls.' Mem.") at 9-10, Dkt. 20.  Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, is plaintiffs' motion for default judgment ("motion").  *See* Order Referring Motion (June 28, 2021).  For the reasons set forth below, this Court recommends granting in part and denying in part plaintiffs' motion.

## I.    Background

The following facts are drawn from plaintiffs' Complaint and declarations and are accepted as true for purposes of this motion.  Defendant Hyper Structure was and is a domestic corporation with its principal place of business at 74 Pennsylvania Avenue, Suite 2, Brooklyn, New York, 11207, and an address for service of process at c/o Mohammad Rahman, 1562 Pacific Street, Brooklyn, New York 11213.  *See* Compl. ¶ 9.  Defendants Sahel Khan and Charles Toliver are principals of Hyper Structure, and defendant Mohammad Rahman is the owner of Hyper Structure.  *See id*. ¶¶ 10-12.  All defendants had the power to hire and fire employees at Hyper Structure, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees at Hyper Structure.  *See id*. ¶¶ 10-12.  At all relevant times, the gross receipts of Hyper Structure were not less than $500,000.00.  *See id*. ¶ 58.  Moreover, at all relevant times, defendants were engaged in the construction industry, an industry influencing commerce within the meaning of 29 U.S.C. §

---

at 18-19.  As these forms of relief are not addressed in plaintiffs' motion, the Court finds that plaintiffs have abandoned these other forms of relief.  *See, e.g., State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in [its] brief, we consider those arguments abandoned.") (citation omitted).  Although plaintiffs do not make an application for fees in connection with their default judgment motion, as discussed in Section III.D, below, because prevailing plaintiffs are entitled to reasonable attorney's fees and costs under both the FLSA and NYLL, the Court recommends granting plaintiffs leave to file an application for fees.  *See Fed. Ins. Co. v. CAC of NY*, No. 14-CV-4132, 2015 WL 1198423, at *1 (E.D.N.Y. Mar. 16, 2015) (granting plaintiff's request for leave to file a motion for attorney's fees in accordance with Fed. R. Civ. P. 54(d)(2)).

203, and regularly handled products which had been moved in commerce. *See id.* ¶¶ 13-14, 56.

### A.    Castro's Employment History

Defendants employed Castro as a flag person at a construction site located at 138-28 Queens Boulevard, Jamaica, New York, 11435 ("Construction Site") from in or about February 2019 until in or about December 2019. *See id.* ¶ 28. Castro was regularly scheduled to work five days per week from 7:00 a.m. to 3:30 p.m.,[2] or 8.5 hours per day, for a total of 42.5 hours per week. *See* Affidavit of Maria Castro ("Castro Aff.") ¶ 2, Dkt. 27-1; Dkt. 29 at 1; *but see* Compl. ¶ 29. According to Castro, when concrete was delivered to the Construction Site, approximately three days per week, defendants required Castro to work until 7:00 p.m., or 12 hours per day, which caused Castro to work 53 hours per week.[3] *See* Castro Aff. ¶ 3 (performed

---

[2] The Court notes that the Complaint and attorney affirmation state that Castro worked from 7:30 a.m. to 3:00 p.m., or 7.5 hours per day, for a total of 37.5 hours per week. *See* Compl. ¶ 29 (stating that Castro was regularly scheduled to work from 7:30 a.m. to 3:00 p.m., for a total of 37.5 hours per week); Affirmation of Anne Seelig ("Seelig Aff."), Dkt. 19 ¶ 12 (same).

However, because Castro's personal affidavit states that she was regularly scheduled to work from *7:00* a.m. to *3:30* p.m., and her attorney's supplemental damages letter explains that "[i]n working with Plaintiff Castro to prepare her Affidavit in Support, Castro clarified her recollection of her work schedule to be 7:00 a.m. to 3:30 p.m., five (5) days per week," this Court presumes that the work schedule provided in Castro's affidavit is correct.

The Court notes that this revised work schedule totals *8.5* hours per day, or a total of *42.5* hours per week, and notes that Castro's attorney's statement that it totals 7.5 hours per day, or a total of 37.5 hours per week, appears to be a miscalculation based on the incorrect hours in the Complaint. *See* Castro Aff. ¶ 2 (stating that she worked from 7:00 a.m. to 3:30 p.m., for a total of 37.5 hours per week); Dkt. 29 at 1 (same).

[3] As discussed in Section III.A.4.a, below, Castro claims that these extra hours constituted "off-the-clock" hours each day that cement was delivered, which would total 10.5 off-the-clock hours per week based on the revised work schedule in Castro's affidavit. However, this Court applies the presumption that Castro's wages were intended to cover 40 hours of work per week. All additional hours worked over 40 each week -- *i.e.*, 13 hours per week -- are thus covered by Castro's overtime claim. In light of this, and as discussed below, since Castro was generally scheduled to work 42.5 hours per week, her "time shaving" claim is duplicative of her overtime claim.

off-the-clock work until 7 p.m.); Dkt. 29 at 1 (same); Compl. ¶ 29.  Although defendants represented to Castro at the time of hiring that she would be paid at a rate of $150 per workday, Castro was instead paid a fixed salary of $400 per week in cash, regardless of hours worked.  *See* Compl. ¶¶ 30-31.  In or around December 2019, this fixed salary changed to $300 per week in cash, regardless of hours worked.  *See id*. ¶ 31.  In addition, for the final two weeks of Castro's employment, she did not receive any compensation.  *See id*.

### B.    Martinez's Employment History

Defendants employed Martinez as a foreman at the same Construction Site from in or about October 2019 until in or about March 2020.  *See* Compl. ¶ 35.  Martinez worked five days per week from 6:30 a.m. to 4:30 p.m., or 10 hours per day.  *See id*. ¶ 36.  According to Martinez, when concrete was delivered to the Construction Site, approximately 3 days per week, defendants required Martinez to work until 7:00 p.m., or 12.5 hours per day, which caused Martinez to work 57.5 hours per week.[4]  *See id*.  Regardless of the hours worked, defendants paid Martinez a fixed salary of $1,800 per week in cash.  *See id*. ¶ 37.  In or around January 2020, this fixed salary changed to $1,000 per week in cash, "because Defendants said they 'didn't have money' to pay," regardless of the hours worked.  *See id*.; Affidavit of Mario Del Valle Martinez ("Martinez Aff.") ¶ 5, Dkt. 27-1.

### C.    Defendants' FLSA and NYLL Violations

Plaintiffs regularly worked for the defendants more than 40 hours per week, but did not

---

[4] As discussed in Section III.A.4.b, below, Martinez claims that these extra hours constituted 2.5 "off-the-clock" hours each day that cement was delivered, totaling 7.5 off-the-clock hours per week.  *See id*.  However, as discussed below, this Court applies the presumption that Martinez's wages were intended to cover 40 hours of work per week.  All additional hours worked over 40 each week -- *i.e.*, 17.5 hours per week -- are thus covered by Martinez's overtime claim.  In light of this, and as discussed below, since Martinez was generally scheduled to work 50 hours per week, his "time shaving" claim is duplicative of his overtime claim.

receive any overtime premium of one-and-one-half times their regular rates of pay for those

hours. *See* Compl. ¶¶ 32, 38, 40. They allege that they did not receive the statutory minimum

wage, were not paid for the overtime and off-the-clock hours worked, and were not paid a

spread-of-hours premium. *See id.* ¶¶ 34, 41-42. Plaintiffs further allege that they were not given

proper wage statements or accurate W-2 statements for each tax year during which they worked.

*See id.* ¶¶ 43-44.

On March 16, 2021, plaintiffs timely commenced this action[5] alleging, *inter alia*,

violations of the FLSA (Count I), NYLL (Count II), and 26 U.S.C. § 7434(a) (Count III). *See id.*

¶¶ 55-79. Defendant Hyper Structure was served on April 28, 2021, and Toliver, Rahman, and

Khan were served on May 4, 2021.[6] *See* Dkts. 10-13. Defendants have failed to answer the

Complaint or otherwise appear in this case. On June 16, 2021, the Clerk entered a Certificate of

---

[5] The NYLL has a six-year statute of limitations, *see* N.Y. Lab. Law § 663(3), and the FLSA has a two-year statute of limitations, *see* 29 U.S.C. § 255(a), unless the plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years. *See id.* Plaintiffs allege that defendants willfully violated both the FLSA and the NYLL. *See* Compl. ¶¶ 62, 65, 74-75. "Generally, courts have found that a defendant's default establishes willfulness." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (citing *Hernandez v. PKL Corp.*, No. 12-CV-2276, 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013)); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) ("The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness."); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)) ("In the present case, defendants defaulted, and therefore the three-year statute of limitations applies.").

Here, this Court deems the plaintiffs' allegations to be admitted by virtue of defendants' default, finds that the defendants' violations were willful, and applies the three-year limitations period for the FLSA violations. Given that plaintiffs filed suit in March 2021 for periods of employment beginning in February 2019 and October 2019, respectively, this Court finds that plaintiffs timely filed their Complaint.

[6] Based on the affidavits of service, this Court finds that plaintiffs properly served defendants in accordance with Fed. R. Civ. P. Rule 4(e).

Default as to all defendants.  *See* Dkt. 17.  On June 25, 2021, plaintiffs moved for a default

judgment.  *See* Dkts. 18-20.  On November 12, 2021, plaintiffs filed affidavits in support of their

motion, *see* Dkt. 27-1, Ex. A (Castro Aff. and Martinez Aff.), and a revised damages calculation,

Dkt. 27-2, Ex. B.  On January 10, 2022, plaintiffs filed a letter explaining their revised damages

calculations.  *See* Dkt. 29.

## II.    Discussion

### A.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment.

The Rule sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v.

Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See

id.*; *see also* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise, the clerk must enter the party's default").  This first step is

nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second,

after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise

move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a

default judgment.  *See* Fed. R. Civ. P. 55(a), (b)(2).

Here, on June 16, 2021, the Clerk of the Court entered a default against defendants, after

defendants failed to respond to the Complaint.  *See* Dkt. 17.  To date, defendants have not

appeared or moved to vacate the entry of default.

Whether or not a default judgment is issued is up to the discretion of the court.  When

evaluating a plaintiff's application for a default judgment, "a court is required to accept all []

factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (internal quotations and citations omitted)).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual

allegations are true.  *See Masino v. Architectural Pavers Corp.*, No. 09-CV-2213, 2010 WL 415286, at *2 (E.D.N.Y. Jan. 15, 2010); *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor.").  A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted).  Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, *see* Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *King v. STL Consulting LLC*, No. 05-CV-2719, 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the Complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved -- the more money involved, the less justification for entering the default judgment. *See Hirsch v. Innovation Int'l, Inc.*, No. 91-CV-4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material

issues of fact remain, whether the facts alleged in the Complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019); *see also Enron Oil*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases).

Here, defendants have not responded to the Complaint despite proper service. *See* Dkts. 10-13. Plaintiffs filed an affidavit of service confirming service of the motion for default judgment on defendants. *See* Dkt. 21. Defendants have nonetheless failed to respond to plaintiffs' motion for default judgment or to otherwise appear in this action. Accordingly, defendants' failure to respond to the Complaint or the instant motion demonstrates that their default was willful.

9

As to the second factor, defendants' failure to appear in this action has left the Court unable to assess whether defendants have a meritorious defense.  This weighs in favor of granting a default judgment.  *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

With respect to the third factor, because defendants have demonstrated a refusal to engage in this action, "there are no additional steps available to secure relief [against defendant] in this Court." *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).  This Court finds that the prejudice factor weighs in favor of default judgment.

Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

**B.     FLSA**

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).  To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists, and (2) the employment

falls under the FLSA's individual or enterprise coverage provisions. *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a). The FLSA further defines the term "employee" as "any individual employed by an employer." *Id.* § 203(e)(1). "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

There is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374-75 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant:  "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Irizarry*, 722 F.3d at 104-05 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship.  *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).

Moreover, for the FLSA's minimum wage and overtime provisions to apply to an individual employee, the employee's work must directly involve or relate to interstate commerce or, in other words, "the movement of persons or things . . . among the several States or between any State and any place outside thereof."  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103) (emphasis omitted).  As relevant here, for an employee to plead that they are covered by the FLSA because their employer is an enterprise engaged in interstate commerce, plaintiffs must demonstrate that their employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of commerce, including the "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce[.]"  29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also* 29 C.F.R. § 779.238.

Plaintiffs' unopposed allegations are sufficient to show that they are entitled to the FLSA's protections.  First, plaintiffs sufficiently demonstrate that individual defendants (*i.e.*, Khan, Toliver, and Rahman) employed plaintiffs under the definition of the FLSA.  Plaintiffs

allege that the individual defendants had the power to "fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees." Compl ¶¶ 10-12. Plaintiffs also allege that "[a]t all times, employees could complain to [defendants] directly regarding any of the terms of their employment, and [defendants] had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their jobs duties improperly." *Id*. While plaintiffs do not allege that the defendants maintained employment records, plaintiffs do allege that "[r]ecords concerning the number of hours worked by Plaintiffs . . . and the actual compensation paid to Plaintiffs . . . should be in the possession and custody of Defendants." *Id*. ¶ 61. As the other "economic reality" factors are clearly satisfied by plaintiffs' allegations, this Court thus finds that the individual defendants (Khan, Toliver, and Rahman) employed plaintiffs under the definition of the FLSA. *See Irizarry*, 722 F.3d at 104-05; *see also Sarmiento Perez v. Comhar Grp., LLC*, No. 19-CV-0964, 2020 WL 1364908, at *3-*4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares Corp.,* No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Second, plaintiffs' allegations also are sufficient to conclude that the individual defendants employed plaintiffs jointly with Hyper Structure. Plaintiffs allege that they were "hired by Defendants to work . . . at the Construction Site," that Khan and Toliver were "principal[s] of Corporate Defendant" and that Rahman was the "owner of Corporate Defendant." *Id*. ¶¶ 10-12, 28, 35. Further, plaintiffs allege that "[a]t all relevant times, Defendants have owned and operated Corporate Defendant as a general contractor in the

13

construction industry." *Id.* ¶ 13.  A plaintiff's allegations that the individual defendants and corporate defendant are part of a common ownership or management of a business, coupled with defendants' default, are sufficient to allege joint employment following a default.  *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011).  Based on the plaintiffs' allegations, this Court finds that plaintiffs were jointly employed by the individual defendants and corporate defendant.

Third, plaintiffs' allegations are sufficient to conclude that the defendants operated in interstate commerce.  Plaintiffs' allegations that Hyper Structure has annual revenue in excess of $500,000 and that the defendants "were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a)" are sufficient to meet the pleading requirement for an enterprise coverage FLSA claim in a default proceeding.  *See* Compl. ¶¶ 56, 58; *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA."), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Although some courts have questioned whether complaints that merely repeat the language of a statute without alleging supporting facts properly plead a cause of action, *see, e.g., Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85 (E.D.N.Y. 2012), other courts have held allegations similar to those made here with respect to enterprise coverage to be sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise and that generates "over $500,000.00 in annual sales d[id] not exclusively come from New York State."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see*

*also Huerta v. Victoria Bakery*, No. 10-CV-4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012).

Here, "[a]lthough the Complaint does not specify what products moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA as it is likely that at least some of the materials required to operate a construction company originated from outside of New York." *Luna*, 2017 WL 835321, at *5 (collecting cases). "[C]ourts in this District have routinely inferred, even absent specific allegations, that companies engaged in the construction industry are engaged in interstate commerce." *Ochoa v. Aucay Constr. Inc.*, No. 19-CV-3866, 2020 WL 9814092, at *4 (E.D.N.Y. Sept. 15, 2020); *see, e.g., Luna*, 2017 WL 835321, at *5; *Duarte v. Falcon Gen. Const. Servs., Inc.*, No. 13-CV-596, 2014 WL 4906661, at *3 (E.D.N.Y. Sept. 11, 2014), *report and recommendation adopted*, 2014 WL 4904759 (E.D.N.Y. Sept. 30, 2014) ("Since plaintiffs allege that defendants [] operated construction businesses, it is reasonable to infer, given the nature of the types of supplies typically used in construction, that plaintiffs handled goods and materials that moved in interstate commerce.").

Accordingly, this Court recommends finding that the allegations in plaintiffs' Complaint, admitted by entry of default, are sufficient to conclude that the individual defendants jointly employed plaintiffs with Hyper Structure, and their employment falls under the FLSA's protections.

## C.    NYLL

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by

an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).

As stated above, this Court finds that plaintiffs were jointly employed by the individual defendants and Hyper Structure under the FLSA, and, therefore, this Court applies the same standards to recommend finding that plaintiffs were jointly employed by the individual defendants and Hyper Structure under the NYLL.[7] *See Rodriguez v. Almighty Cleaning, Inc*., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.") (collecting cases).

### D.    26 U.S.C. § 7434(a)

Plaintiffs also bring claims for fraudulent filing of information returns pursuant to 26 U.S.C. § 7434. *See* Compl. ¶¶ 77-79. That statute states, in pertinent part, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). An "information return" includes the annual W-2 Form. *See* 26 U.S.C. §§ 6724(d)(1)(A)(vii), 7434(f); *see also* 26 C.F.R. § 1.6041-2. This claim

---

[7] As the Court finds that the individual defendants and Hyper Structure were jointly plaintiffs' employers, each defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in plaintiffs' favor. *See Mahoney v. Amekk Corp*., No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (citing *Pineda*, 831 F. Supp. 2d at 685); *Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625, 2015 WL 12645527, at *4 (E.D.N.Y. Aug. 27, 2015).

may only exist when a defendant "*willfully files* a fraudulent information return." *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (internal citations and quotations omitted) (emphasis in original).  To state a claim under § 7434, "a plaintiff must allege facts to support that:  (1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return." *Munn v. APF Mgmt. Co., LLC*, No. 19-CV-10791, 2020 WL 7264471, at *4 (S.D.N.Y. Dec. 10, 2020) (quoting *Yunjian Lin v. Grand Sichuan 74 St. Inc.*, No. 15-CV-2950, 2019 WL 3409892, at *4 (S.D.N.Y. July 29, 2019)).  "An allegation that a person intentionally *failed to file* a required information return does not state a claim under § 7434."  *Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840, 2021 WL 634717, at *11 (S.D.N.Y. Feb. 16, 2021) (emphasis added).

Plaintiffs allege that defendants "failed to provide Plaintiffs [] with accurate W-2 statements for each tax year during which they worked" and that "[b]y failing to provide Plaintiffs [] with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants, and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs [] as compensation for all the work Plaintiffs [] performed during the course of their employment with Defendants, and failing to withhold amounts listed on W-2 forms as monies withheld" this demonstrates that "Defendants filed fraudulent information returns with the IRS."  Compl. ¶¶ 45, 78.

As alleged, these facts leave the Court unclear as to whether plaintiffs received W-2 Forms at all, and plaintiffs seem to ask the Court to use defendants' alleged "fail[ure] to [] report to the IRS" as evidence that defendants willfully filed fraudulent returns with the IRS under 26 U.S.C. § 7434.  In light of this, as it stands, the Complaint sits in limbo and permits dual

inferences that fraudulent information returns may or may not have been filed.  Given that

"failing to file an information return does not, in itself, give rise to a claim under 26 U.S.C.

§ 7434," *Chen v. Kyoto Sushi, Inc.*, No. 15-CV-7398, 2017 WL 4236556, at *6 (E.D.N.Y. Sept.

22, 2017), this Court finds that plaintiffs have failed to state a claim under 26 U.S.C. § 7434 and

recommends denying default as to this claim.

## III.   Relief

A party's default "is not considered an admission of damages." *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v.*

*Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Accordingly, "[i]f the defaulted complaint suffices to

establish liability, the court must conduct an inquiry sufficient to establish damages to a

'reasonable certainty.'" *Gunawan*, 897 F. Supp. 2d at 83 (quoting *Credit Lyonnais Sec. (USA),*

*Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based

upon evidence presented at a hearing or upon a review of detailed affidavits and documentary

evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508

(2d Cir. 1991).

### A.   Unpaid Wages Due

"Under both the FLSA and NYLL, an employer is required to maintain records of the

wages, hours, and persons employed by him [or her]." *Lu Nan Fan v. Jenny & Richard's Inc.*,

No. 19-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotations and

citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9,

2019).  Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's

sworn statements "containing information as to hours worked and rates of pay based on

estimation and recollection, even if the information provided is general and not detailed, is

considered a sufficient basis for the determination of damages in this context." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotations and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera*, 2015 WL 1529653, at *8. "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Plaintiffs have submitted their own sworn affidavits, along with a sworn affirmation of their attorney, Anne Seelig, describing their dates of employment along with average hours worked and wages per week. *See* Castro Aff., Ex. A at ECF pages 2-3, Dkt. 27-1; Martinez Aff., Ex. A at ECF pages 5-6, Dkt. 27-1; Seelig Aff. ¶¶ 12-14, 17-18, Dkt. 19. Plaintiffs' attorney also has submitted exhibits in support of the instant motion, including tables of damage calculations and an explanation of plaintiffs' revised damages tables. *See* Seelig Aff., Exs. G-H, Dkts. 19-7, 19-8; *see also* Revised Damages Calculation, Ex. B, Dkt. 27-2; Dkt. 29.[8] In light of defendants' default, plaintiffs' evidence on damages stands uncontroverted, and, therefore, plaintiffs have provided a sufficient basis upon which to determine damages.

### 1.    Regular Wage

To calculate a plaintiff's minimum wage and overtime compensation, the Court must first determine the plaintiff's regular hourly wage rate. *See Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and*

---

[8] The Court notes that plaintiffs submitted revised damages calculations on November 12, 2021, Dkt. 27-2, which generate different totals from the damages calculations submitted with the Motion for Default Judgment, *see* Exs. G-H, Dkts. 19-7, 19-8. Based on plaintiffs' attorney's explanation of the revised damages, this Court views the revised calculations as the final damages request, except for the spread-of-hours claim, which is only calculated in the original damages table.

*recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011). Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract." 29 C.F.R. § 778.108.

Because plaintiffs were compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate." *Id.* § 778.113(a). "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-0165, 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).

Here, plaintiffs allege that Castro was paid "in cash on a fixed salary basis, regardless of her actual hours worked, and there was never any understanding that the fixed salary was intended to cover any overtime hours over forty (40) hours worked." Compl. ¶ 30. Although Castro alleges that she was generally scheduled to work 8.5 hours per day, from 7:00 a.m. to 3:30 p.m., totaling 42.5 hours per week, she also alleges that she worked until 7:00 p.m. three

20

days per week, which brought her weekly hours up to 53 hours per week.  *See* Castro Aff. ¶¶ 2-3;

Dkt. 29 at 1.  While Castro states that the hours worked from 3:30 p.m. until 7:00 p.m. were "off-

the-clock," *id.*, her regular hours already exceeded 40 hours per week, and Castro does not allege

that there was any agreement or understanding with defendants that her weekly compensation

was intended to cover any amount of time other than 40 hours.  In addition, the Complaint does

not allege any violation in connection with unpaid wages for work under 40 hours.  *See id*. ¶¶ 59,

69.  In light of this, the Court applies the presumption that Castro's fixed salary was

compensation for the first 40 hours she worked per week.[9]  For the period Castro worked from

February 1, 2019 until November 30, 2019 (302 days or 43.14285714 weeks), she was paid $400

per week.  *See* Dkt. 19-7 at 2.  Therefore, her regular rate of pay was $10.00 per hour ($400/40

hours) for that period (the "Castro Period 1").  For the period worked from December 1, 2019

until December 17, 2019 (16 days or 2.28571429 weeks), plaintiffs allege that Castro was paid

$300 per week.  *See id* at 2-3.  Therefore, her regular rate of pay was $7.50 per hour ($300/40

hours) for that period (the "Castro Period 2").  Finally, plaintiffs allege that for the period Castro

worked from December 18, 2019 until December 31, 2019 (13 days or 1.85714285 weeks), she

was not paid at all (the "Castro Period 3").  *See id* at 3.

Martinez's alleged wages differ from Castro's alleged wages, but Martinez also states

that he was paid "on a fixed salary basis in cash, regardless of actual hours worked" and that

"there was never any agreement that [Martinez's] fixed salary was intended to cover overtime

hours."  Compl. ¶¶ 37, 40.  Like Castro, Martinez also does not allege that there was any

agreement with defendants that his compensation was intended to cover less than 40 hours.  *See*

---

[9]  Castro's own calculation of her regular rate of pay, which she determines by dividing her
weekly wages by 40 hours, further supports applying the 40-hour presumption.  *See* Dkt. 19-7 at
1; Dkt. 27-2, Ex. B.

*id*.  For this reason, the Court applies the presumption that Martinez's fixed salary represented compensation for the first 40 hours he worked each week.[10]  Martinez alleges that for the period he worked from October 1, 2019 until December 31, 2019 (91 days or 13 weeks), he was paid $1,800 per week.  *See* Dkt. 19-8 at 2.  Therefore, his regular rate of pay was $45.00 per hour ($1,800/40 hours) for that period (the "Martinez Period 1").  For the period worked from January 1, 2020 until March 31, 2020 (90 days or 12.85714286 weeks), Martinez alleges that he was paid $1,000 per week, but should have been paid $1,800 per week.  *See* Martinez Aff. ¶¶ 4-5; Dkt. 29 at 1-2.  Therefore, his regular rate of pay was also $45.00 per hour ($1,800/40 hours) for that period (the "Martinez Period 2").

## 2. Unpaid Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at least a minimum hourly rate for every hour that they work.  *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). "Although a plaintiff may be 'entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.'"  *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170, 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (brackets omitted)), *report and recommendation adopted*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019).  "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (citation omitted).

---

[10]  Martinez's own calculation of his regular rate of pay, which he determines by dividing his weekly wages by 40 hours, further supports applying the 40-hour presumption.  *See* Dkt. 19-8 at 1; Dkt. 27-2, Ex. B.

At all times relevant here, the FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25. *See* 29 U.S.C. § 206(a)(1)(C). The applicable minimum wage under the NYLL for a New York City employer with ten or less employees during the relevant period was $13.50 per hour on or after December 31, 2018, and $15.00 per hour on or after December 31, 2019.[11] *See* N.Y. Lab. Law § 652(1)(a)(ii). Given that the minimum wage under NYLL is higher than that of the FLSA, this Court analyzes plaintiffs' minimum wage entitlement under the NYLL.

Here, only Castro claims that she was deprived of a minimum wage. *See* Compl. ¶ 60. As discussed above, Castro performed work for defendants before December 31, 2019, except for her last day of employment; thus, her wage should have been $13.50 per hour under the NYLL, and $15.00 on her last day. Her regular rate of pay was $10.00 per hour for Castro Period 1 (totaling 43.14285714 weeks[12]), $7.50 per hour for Castro Period 2 (totaling 2.28571429 weeks), and $0.00 per hour for Castro Period 3 (totaling 1.85714285 weeks broken down as follows: 1.71428571 weeks through December 30, 2019 and 0.14285714 weeks for December 31, 2019).

For Castro Period 1, Castro was paid $3.50 below the hourly minimum wage rate ($13.50 - $10.00) and is owed **$6,040.00** for the first 40 hours she worked in each week ($3.50 × 40 hours × 43.14285714 weeks). For Castro Period 2, Castro was paid $6.00 below the hourly

---

[11] The rates listed apply to "small employers," or those employers with "ten or less employees." N.Y. Lab. Law § 652(1)(a)(ii). "In the absence of information as to the size of an employer's workforce, courts apply the rate for small employers." *Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095, 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019), *report and recommendation adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019). As plaintiffs have not provided any information indicating whether the defendants were small or large employers, this Court applies the rates for small employers.

[12] One day totals approximately 0.142857 weeks.

minimum wage rate ($13.50 - $7.50).  For this period, she is owed **$548.57** for the first 40 hours worked in each week ($6.00 × 40 hours × 2.28571429 weeks).  For Castro Period 3, Castro was paid $13.50 below the hourly minimum wage rate until December 30, 2019 ($13.50 - $0.00), resulting in **$925.71** in unpaid minimum wages for the first 40 hours worked in each week ($13.50 × 40 hours × 1.71428571 weeks).  On December 31, 2019, during this period, she was paid $15.00 below the hourly wage rate ($15.00 - $0.00), resulting in **$85.71** in unpaid minimum wages for the portion of this period covered by December 31, 2019 ($15.00 × 40 hours × 0.14285714).  Based on these calculations, this Court recommends awarding Castro **$7,600.00** in unpaid minimum wages.

### 3.    Unpaid Regular Compensation

"Plaintiffs are entitled to the full amount of their unpaid wages under the NYLL, which requires payment of all unpaid wages." *Herrera*, 2015 WL 1529653, at *8 (citing N.Y. Lab. Law § 198(3)); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 379 (E.D.N.Y. 2012).  Although defendants paid Martinez more than the minimum wage, he alleges that for the period worked from January 1, 2020 until March 31, 2020, defendants had promised to pay him $1,800 per week, but, in fact, received only $1,000 per week.  *See* Martinez Aff. ¶¶ 4-5; Dkt. 29 at 1-2. Because his regular rate of pay should have been $45.00 per hour ($1,800/40), but he was only paid $25.00 per hour during this time ($1,000/40), Martinez is entitled to the unpaid $20.00 per hour for this period of time, which totals **$10,285.71** ($20.00 × 40 hours × 12.85714286).[13]

---

[13] Any differences between the Court's calculations of Martinez's regular hours and plaintiffs' final calculations are due to plaintiffs' counsel rounding the week periods, while the Court uses more precise numbers.

### 4.    Unpaid Overtime Compensation[14]

Under the FLSA, an employers must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a).  The NYLL incorporates and restates the FLSA's requirements, and the analysis of overtime claims under the NYLL is generally the same as under the FLSA.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).  "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Guerrero*, 2019 WL 4889591, at *8 (internal quotations and citation omitted).

Though plaintiffs have made allegations sufficient to hold defendants liable under both the FLSA and NYLL's overtime provisions, *see* Compl. ¶¶ 59, 69, they are "not entitled to

---

[14] The Court notes that plaintiffs also allege that they are owed money in connection with defendants' "time shaving" practice, in which plaintiffs' were made to work "off-the-clock."  *See* Compl. ¶¶ 29, 36; Dkts. 19-7; 19-8; 27-2, Ex. B.  However, the Court cannot identify any basis for analyzing this claim as a separate claim from the minimum wage and overtime claims.  As discussed above, plaintiffs allege that they were paid on a "fixed salary basis, regardless of [] actual hours worked," Compl. ¶¶ 30, 37, and that "there was never any agreement that Plaintiffs['] fixed weekly salary was intended to cover overtime hours over forty (40) hours," *see id*. ¶¶ 30-32, 38, 40.  Plaintiffs' own regular rate calculations also are based on a 40-hour work week.  *See* Dkts. 19-7; 19-8; 27-2, Ex. B.

Moreover, both plaintiffs worked more than 40 regular hours in a week, and plaintiffs do not allege that there was any agreement that their fixed wages were intended to cover an amount other than a 40-hour work week.  As previously discussed, based on the foregoing, the Court presumes that plaintiffs' wages were intended to cover the first 40 hours worked each week.  *See Berrios*, 849 F. Supp. 2d at 385.  Applying the presumption that plaintiffs' wages covered 40 hours of work each week, the Court finds that plaintiffs' salaries covered all hours worked up to 40 hours per week, and thus there are no unpaid "off-the-clock" hours shaved from plaintiffs' regular wages for hours worked under 40 hours.  Any uncompensated "off-the-clock" time over 40 hours is covered by plaintiffs' overtime claims, which the Court has awarded in this Section.

recover under both FLSA and NYLL for overtime earned during the same period." *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *10 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). The Court may, however, exercise its discretion to "award [] damages under the statute providing the greatest amount of relief." *Id*. Given that the higher rate of minimum wage under New York law leads to a higher overtime rate under the NYLL than the FLSA, this Court analyzes plaintiffs' entitlement to overtime wages under the NYLL. *See Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (awarding back wages under the NYLL rather than the FLSA because "[p]laintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL").

### a.   Overtime Compensation Owed Castro

Here, Castro sufficiently demonstrates that defendants did not pay her overtime compensation for 13 hours worked each week of her employment. *See* Dkt. 27-2, Ex. A at ECF page 2, ¶¶ 2-3 and Ex. B at ECF page 2; Dkt. 29 at 1.[15] For Castro Period 1 -- the period between February 1, 2019 and November 30, 2019 -- Castro should have been paid an overtime rate of $20.25 ($13.50 × 1.5) for each hour that she worked in excess of 40 per week. As Castro

---

[15] As noted in Section I.A. at n.2, above, plaintiffs incorrectly state that Castro's regular hours total 37.5 hours per week, when she avers to have worked 42.5 regular hours per week. *See* Dkt. 27-2, Ex. A at ECF page 2, ¶¶ 2-3. Any differences between the Court's calculations of Castro's overtime and plaintiffs' final calculations are due to (1) plaintiffs' counsel rounding the week periods, while the Court uses more precise numbers; (2) plaintiffs' counsel using the New York large-employer pay rates, while the Court uses the small-employer pay rate given plaintiffs' failure to produce any evidence that defendants qualify as a large employer; and (3) plaintiffs' counsel incorrectly allocating 2.5 hours of overtime to unpaid regular hours (*i.e.*, 7:00 a.m. to 3:30 p.m. is 42.5 regular hours; 3:30 p.m. to 7:00 p.m. is 3.5 extra hours; if Castro worked 3.5 extra hours each week, her total weekly hours equals 53 hours or 13 unpaid overtime hours).

was not paid any overtime during this period, and as she worked for a total of 53 hours per week during this time period, Castro is owed overtime compensation for 13 hours (53 - 40) per week. Thus, Castro is entitled to **$11,357.36** ($20.25 × 13 hours × 43.14285714 weeks) in overtime compensation for this period.

For Castro Period 2 -- the period between December 1, 2019 and December 17, 2019 -- Castro should have been paid the same overtime rate of $20.25 ($13.50 × 1.5) for each hour that she worked in excess of 40 per week. As Castro was not paid any overtime during this period, and as she worked for a total of 53 hours per week during this time period, Castro is owed overtime compensation for 13 hours (53 - 40) per week. Thus, Castro is entitled to **$601.71** ($20.25 × 13 hours × 2.28571429 weeks) in overtime compensation for this period.

Finally, for Castro Period 3 -- the period between December 18, 2019 and December 31, 2019 -- Castro should have been paid the same overtime rate of $20.25 ($13.50 × 1.5) for each hour that she worked in excess of 40 per week, except for her last day when she should have been paid overtime of $22.50 ($15.00 × 1.5). As Castro was not paid any overtime during this period, and as she worked for a total of 53 hours per week during this time period, Castro is owed overtime compensation for 13 hours (53 - 40) per week. Thus, Castro is entitled to **$451.29** ($20.25 × 13 hours × 1.71428571 weeks) in overtime compensation for this period until December 30, 2019, and **$41.79** ($22.50 × 13 hours × 0.14285714 weeks) in overtime compensation for the part of the period covered by December 31, 2019.

In sum, this Court recommends awarding Castro a total of **$12,452.15** in unpaid overtime wages.

**b.    Overtime Compensation Owed Martinez**

Similarly, the Court finds that defendants failed to pay Martinez overtime compensation

for 17.5 hours worked each week of his employment. *See* Compl. ¶¶ 36-38, 40; Dkt. 27-2, Ex. B at ECF page 3.[16]  For Martinez Period 1 -- the period between October 1, 2019 and December 31, 2019 -- Martinez should have been paid an overtime rate of $67.50 ($45.00 × 1.5) for each hour that he worked in excess of 40 per week.  As Martinez was not paid any overtime during this period, and as he worked for a total of 57.5 hours per week during this time period, Martinez is owed overtime compensation for 17.5 hours (57.5 - 40) per week.  Thus, Martinez is entitled to **$15,356.25** ($67.50 × 17.5 hours × 13 weeks) in overtime compensation for this period.

For Martinez Period 2 -- the period between January 1, 2020 and March 31, 2020 -- Martinez should have been paid an overtime rate of $67.50 ($45.00 × 1.5) for each hour that he worked in excess of 40 per week.  As Martinez was not paid any overtime during this period, and as he worked for a total of 57.5 hours per week during this time period, Martinez is owed overtime compensation for 17.5 hours (57.5 - 40) per week.  Thus, Martinez is entitled to **$15,187.50** ($67.50 × 17.5 hours × 12.85714286 weeks) in overtime compensation for this period.

In sum, this Court recommends awarding Martinez a total of **$30,543.75** in unpaid overtime wages.

### 5.    Spread of Hours Compensation

Although plaintiffs initially raised a claim for spread of hours compensation, plaintiffs later withdrew this claim.  *See* Dkt. 29 at ECF page 1 (calculation of unpaid spread of hours

---

[16] Plaintiffs' counsel separates Martinez's overtime calculations into two categories -- (1) Unpaid Wages -- Overtime Wage, and (2) Timeshaving -- OT.  *See* Dkt. 27-2, Ex. B at ECF page 3. However, as discussed in footnote 14, above, the time-shaving claim and overtime claim appear to be the same, and the Court sees no reason to separate them.  Any differences between the Court's calculations of Martinez's overtime and plaintiffs' final calculations are due to plaintiffs' counsel rounding the week periods, while the Court uses more precise numbers.

removed from Castro's revised damage calculations) and ECF page 2 (withdrawing Martinez's claim for unpaid spread of hours premium); *see also* Dkt. 27-2, Ex. B (no claim for spread of hours compensation in revised damages calculation).  This Court accepts plaintiffs' withdrawal of this claim, and does not recommend an award of spread of hours compensation.

### B.       Statutory Damages under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-b).  Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted).  After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-d).[17]

Here, plaintiffs allege that they never received a wage notice or wage statements from defendants at any point throughout the course of their employment.  *See* Compl. ¶¶ 43, 52-53. Because plaintiffs worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, this Court recommends awarding plaintiffs the maximum statutory damages of $5,000 for violations

---

[17] Prior to February 27, 2015, employees were entitled to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500, and for wage statement violations of $100 per work week, not to exceed $2,500.  *See Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**.  *See Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

### C.   Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  *See* 29 U.S.C. § 260.  Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to [100] percent of the total amount of the wages found to be due . . . unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotations and citation omitted).  However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions."  *Id.*; *see also* N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See Lu Nan Fan*, 2019 WL 1549033, at \*11. As this Court has calculated plaintiffs' damages according to the NYLL, Castro is entitled to 100 percent of her damages for minimum wages (**$7,600.00**), and overtime wages (**$12,452.15**) under the NYLL.

Similarly, Martinez is entitled to 100 percent of his damages for unpaid regular wages (**$10,285.71**), and unpaid overtime wages (**$30,543.75**) under the NYLL. Accordingly, this Court recommends awarding Castro **$20,052.15** in liquidated damages, and Martinez **$40,829.46** in liquidated damages.

### D.    Attorney's Fees and Costs

As prevailing parties, plaintiffs are entitled to recover reasonable attorney's fees and costs under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b), N.Y. Lab. Law §§ 198, 663(1)). While plaintiffs' Memorandum of Law does not include a fee application, plaintiffs request attorney's fees and costs in their Complaint. *See* Compl., Prayer for Relief, at 19.

As plaintiffs have now prevailed in this matter and are entitled to recover reasonable attorney's fees and costs under both statutes, this Court recommends denying without prejudice plaintiffs' request for attorney's fees and costs, and that plaintiffs' counsel be permitted to submit a complete fee application with billing records within 30 days of Judge Vitaliano's decision on this Report and Recommendation.

### Conclusion

For the reasons set forth above, this Court recommends:

(1) granting plaintiffs' motion for a default judgment against defendants, jointly and severally, and entering judgment against defendants Hyper Structure Corp. d/b/a Hyper Structure, Sahel Khan, Charles Toliver, and Mohammad Rahman;

(2) awarding Castro damages totaling **$50,104.30**, consisting of **$7,600.00** in unpaid minimum wages, **$12,452.15** in unpaid overtime compensation, **$10,000** in statutory damages, and **$20,052.15** in liquidated damages; and

(3) awarding Martinez damages totaling **$91,658.92**, consisting of **$10,285.71** in unpaid regular wages, **$30,543.75** in unpaid overtime compensation, **$10,000** in statutory damages, and **$40,829.46** in liquidated damages.

In addition, this Court recommends granting plaintiffs leave to submit a complete application for attorney's fees and costs within 30 days of Judge Vitaliano's decision on this Report and Recommendation.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants and to file proof of service on ECF by **March 9, 2022**. Any objections to the recommendations made in this Report must be filed with the Honorable Eric N. Vitaliano within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 21, 2022**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
      March 7, 2022

                                         s/ James R. Cho
                                         James R. Cho
                                         United States Magistrate Judge